### Raggio v. Johnson et al.

(Decided June 13, 1933.)

HUBBARD & HUBBARD for appellant.

O. G. EVERBACH for appellees.

OPINION OF THE COURT BY JUDGE CLAY—Affirming.

In the year 1923 Charles Raggio and his wife purchased a cottage on Thirty-fifth street in Louisville. The property was conveyed to them for their joint lives with the remainder in fee to the survivor. Mrs. Raggio died May 17, 1929. On October 11, 1929, Raggio conveyed the property to Alice M. Johnson, who in turn conveyed it to him and Anna L. Pickering for their joint lives with remainder in fee to the survivor. On the same day Raggio executed a note to Mrs. Pickering

for $2,500. This action was originally brought to set aside the deed. Later on there was filed an amended petition seeking a cancellation of the note. On final hearing the chancellor refused to set the deed aside, but entered judgment canceling the note. From that part of the judgment sustaining the deed Raggio appeals, and from that part of the judgment canceling the note Anna L. Pickering has prosecuted a cross-appeal.

The evidence shows that for a long period of years Mrs. Raggio was an invalid, and that Mrs. Pickering nursed her, assisted her in her housework, and often prepared her meals. At times Mrs. Raggio was practically helpless, and though her neighbors ministered to her to some extent, it is clear from the evidence that Mrs. Pickering was her mainstay, and performed services of a most menial and exacting kind. Indeed, during the last few months of Mrs. Raggio's life she suffered from a cancer. Mrs. Pickering was the one who dressed the cancer and looked after her comfort in every way. During all this time Mrs. Pickering received nothing for her services, and it is clear that Mr. Raggio felt indebted to her and expressed the purpose to compensate her. On the day Mrs. Raggio died Mr. Raggio went to live with the Pickerings, whose home was nearby, and paid Mrs. Pickering board at the rate of $10 a week. While there he gave Mrs. Pickering a few presents and had certain insurance policies transferred to her. Raggio does not claim that he was the victim of undue influence. On the contrary, he admits that he proposed to will the property to the Pickerings, and in its final analysis his defense is that he did not know the difference between a deed and a will, that the deed was not read to him, and that he executed the deed believing it was a will. At the time he made the deed he was about 65 years of age and somewhat deaf, and though two or three friends expressed some doubt as to his mental capacity, they stated no facts in support of their opinions. It is not denied that he gave the old deed to the Pickerings. Thereafter Mr. Pickering went to an attorney, delivered the deed, and told the attorney how Mr. Raggio wanted the new deed prepared. A few days later Raggio arranged to meet the Pickerings at the office of the attorney. Before the arrival of the others he spent a few minutes with the attorney, and the attorney says that Raggio told him that he wanted

him to prepare a deed like the one he and his wife had. Afterward Raggio went downstairs, joined the Pickerings, and they returned to the office of the attorney. Two deeds were prepared, one from Raggio to Miss Johnson and one from her to Raggio and Mrs. Pickering. Raggio denies that the deeds were read to him, though others present say that they were. After the deeds were signed and acknowledged before a notary, Raggio took possession of the deed reconveying the property to him and Mrs. Pickering. Afterward some arrangements were made with the building association, which held a mortgage on the property for about $800. After remaining with the Pickerings for several months, Raggio returned to his home and installed Mrs. Queenie Thomas as his housekeeper. Later on he brought this action.

Though Raggio was 65 years of age and somewhat deaf, we are not persuaded that he did not know the difference between a deed and a will, or that he was imposed upon in the transaction. He had been a shipping clerk for 30 years, and his own evidence shows that he is a man of fair intelligence. He admitted on cross-examination that the property was purchased from William Cummings in 1923, that the deed was in his and his wife's name, that he supposed that on her death it would go to him, and that he knew that the deed was a deed. It is equally clear that he delivered the old deed to the Pickerings for the purpose of having the new deed made, and that he told the attorney that he wanted the deed to himself and Mrs. Pickering prepared in the same way. In addition to this, the weight of the evidence is that both the deed to Alice M. Johnson and the deed from her to Raggio and Mrs. Pickering were read in his presence. In view of this evidence, it is not apparent how the chancellor could have reached any other conclusion.

On the cross-appeal it is insisted that the $2,500 note is on the same basis as the deed, and should not have been canceled. It developed on the hearing that Raggio had had certain insurance policies aggregating $2,500 transferred to Mrs. Pickering, and that some one had told him that because she was not a blood relative the transfer might be set aside, and he wanted her to have the insurance and therefore wanted the note executed and made payable out of the insurance. After-

ward Raggio changed the beneficiaries in the policies. On this and other evidence the chancellor concluded that it was never intended that the note should be paid by Raggio during his lifetime, or out of his estate, but that the note was given merely to prevent the heirs of Raggio from getting the proceeds of the insurance policies by giving Mrs. Pickering a fictitious status as creditor which could be resorted to in case her status as beneficiary was attacked, and that as Raggio exercised his right to change the beneficiary in the policies, the purpose for which the note had been given had failed, and there being no other consideration for the note it should be canceled. After careful review of all the evidence, we are convinced that the chancellor reached the correct conclusion.

Judgment affirmed on both the original and cross appeals.